IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JEORGE LOGAN,

    Petitioner,                    No. CIV S-07-1687 WBS GGH P

  vs.

BEN CURRY, et al.,

    Respondents.               FINDINGS AND RECOMMENDATIONS

_____/

I. <u>Introduction</u>

        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2004 conviction for corporal injury on a former cohabitant (Cal. Penal Code § 273.5(a)), with a true finding on the great bodily injury/domestic violence allegation (Cal. Penal Code § 12022.7(e)), resulting in serious bodily injury (Cal. Penal Code § 243(d)). Petitioner is serving a sentence of 7 years.

        Petitioner challenges his conviction on two grounds: 1) the trial court improperly admitted evidence of prior bad acts; and 2) ineffective assistance of counsel. After carefully considering the record, the court recommends that the petition be denied.

/////

/////

II. <u>Anti-Terrorism and Effective Death Penalty Act (AEDPA)</u>

The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this petition for habeas corpus which was filed after the AEDPA became effective. <u>Neelley v. Nagle</u>, 138 F.3d 917 (11th Cir.), citing <u>Lindh v. Murphy</u>, 521 U.S. 320, 117 S. Ct. 2059 (1997). The AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. <u>Moore v. Calderon</u>, 108 F.3d 261, 263 (9th Cir. 1997).

In <u>Williams (Terry) v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. <u>Id</u>. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. <u>Williams (Terry)</u>, 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Williams (Terry)</u>, 529 U.S. at 410-11, 120 S. Ct. at

1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Id. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003). Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

When reviewing a state court's summary denial of a claim, the court "looks through" the summary disposition to the last reasoned decision. Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000).

III.  Factual Background

The opinion of the California Court of Appeal contains a factual summary of petitioner's offense. After independently reviewing the record, the court finds this summary to be accurate and adopts it below:

/////

**Prosecution**

On the evening of February 1, 2004, K.C. was a passenger in a vehicle driven by defendant when an argument ensued. They had been dating for two and a half to three years. That night, defendant told K.C. he was going to visit another woman and wanted K.C. to go home. When K.C. refused to leave his car and begged defendant to let her go with him, defendant became physical. He dragged K.C. from his car and stomped and kicked her. Defendant continued to beat her despite her pleas for him [sic] stop.

Meanwhile, Ronnie and Manuel Lopez were passing by the video store. They both observed defendant punch, kick, stomp and tug aggressively at K.C. Ronnie summoned the police for help.

When Police Officer Machias arrived a few minutes later, defendant told Machias his girlfriend had passed out and he was trying to go home. K.C. regained consciousness several second later and screamed in pain that her boyfriend had hit her.

K.C. was transported to the hospital. A doctor determined she had suffered a concussion and rib fractures, which were consistent with her being kicked. An x-ray also indicated that she had "some old rib fractures" on her left side.

**Defense**

Defendant testified that on the night of the incident, he was driving K.C. home because she had been drinking and became belligerent. The two began to quarrel and defendant told K.C. to get out of his car. When she refused, he tried to pull her out. K.C. hugged defendant but he pushed her away causing her to fall to the ground. She grabbed his leg and when he tried to pull free, he accidentally hit her under the chin. Defendant contends he was angry but neither punched nor kicked her.

Respondent's Lodged Document no. 3, pp. 2-3.

IV. <u>Discussion</u>

    A. <u>Admission of Propensity Evidence</u>

    The California Court of Appeal was the last state court to issue a reasoned opinion addressing this claim. <u>See</u> Respondent's Lodged Document no. 3.

    Petitioner alleges that the trial court violated his right to due process by admitting prior domestic violence propensity evidence without properly weighing its probative value against the probability that it would create substantial undue prejudice.

/////

4

The background to this claim is contained in the opinion of the California Court of Appeal:

> Prior to the start of trial, the prosecutor sought to introduce a prior act of domestic violence pursuant to Evidence Code section 1109 (further section references are to the Evidence Code). The evidence consisted of K.C.'s testimony that an argument with defendant escalated into a beating. She suffered broken ribs on her left side when defendant Karate chopped her. X-rays taken after the current offense showed the prior injuries. Defendant objected and requested such evidence be excluded because 1) the probative value did not outweigh the prejudicial impact; 2) the x-rays could confuse the jury since the result of the instant case were negative but old injuries were positive; 3) there was no credible evidence or corroboration of the prior incident; 4) the incident had no probative value to show "propensity" to commit domestic violence.
>
> The trial court admitted the prior domestic violence incident, observing that section 1109 did not require independent witnesses, law enforcement reports, or convictions before such evidence may be allowed in. The court found defendant's arguments went more to the "weight" of the evidence than "admissibility." The court explained the evidence was fairly simple and would not consume a lot of time or be confusing. In fact, it would explain the x-rays and the injury to K.C.'s left side.
>
> During trial, K.C. testified regarding the current offense and a prior domestic violence incident. When probed by the prosecutor, K.C. stated she would rather not provide details of the prior incident. The court informed her she was under oath and was required to answer. K.C. reluctantly testified that two years earlier, defendant hit her on her left side and fractured her lower rib. She testified her ribs hurt "really bad" but she did not seek medical attention or file a report because she did not want to get defendant in trouble. The doctor corroborated K.C.'s account of the prior incident through his testimony regarding her x-ray.
>
> On appeal, defendant contends that the trial court improperly admitted the prior domestic violence evidence. He contends that he was prejudiced because the evidence of his prior domestic violence act "was highly inflammatory and the prejudicial effect of this evidence far outweighed any probative value it had to show defendant's "'propensity'" to commit domestic violence[;]" (2) there was no corroborating evidence of the prior and (3) the evidence of the prior was cumulative.

Respondent's Lodged Document 3, pp. 3-5.

The California Court of Appeal went on to find that the trial court properly admitted the evidence of petitioner's prior domestic violence:

> Defendant's claim lacks merit because the trial court properly admitted the prior domestic violence evidence under section 1109. Generally, evidence of a person's character or past conduct to prove conduct on a specified occasion is inadmissible.

5

(§ 1101, subd. (a).) Section 1109 provides an exception for prior acts of domestic violence in a domestic violence case. (§ 1109.) This section permits a jury to consider prior incidents of domestic violence for the purpose of showing a defendant's propensity to commit offenses of the same type. (Ibid.) Certain conditions apply to this exception. First, the evidence is subject to the provisions of section 352. Second, an act of domestic violence occurring more than 10 years before the charged offense is inadmissible unless the trial court finds admission of this evidence is in the interest of justice. (§ 1109, subd. (e).)

Because section 1109 conditions the introduction of prior domestic violence on whether it is admissible under section 352, defendant's specific due process assertion depends on whether the trial court here sufficiently evaluated the proffered evidence under that section. (People v. Jennings (2000) 81 Cal.App.4th 1301, 1313-1314.) Section 352 permits a court to exclude evidence if its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time or create substantial danger of undue prejudice, of confusion, or misleading the jury. (People v. Harris (1998) 60 Cal.App.4th 727, 730.) Section 352 weighing is a safeguard that ensures admission of propensity evidence does not violate due process. (Ibid.) Accordingly, the admission of prior acts of domestic violence pursuant to section 1109 and in accordance with section 352 does not violate due process. (Cf. People v. Falsetta (1999) 21 Cal.4th 903, 910-922 [applying to prior act of sexual violence under 1108]; People v. Rucker (2005) 126 Cal.App.4th 1107, 1119; People v. Jennings (2000) 81 Cal.App.4th 1301, 1314-1315); People v. Poplar (1999) 70 Cal.App.4th 1129, 1139.)

The trial court's decision under section 352 is reviewed for abuse of discretion. (People v. Escobar (2000) 82 Cal.App.4th 1085, 1097.) It will be overturned unless "palpably arbitrary, capricious and patently absurd." (People v. Jennings, supra, 81 Cal.App.4th 1301, 1314.)

In People v. Harris, supra, 60 Cal.App.4th 727, 737-741, this court set out five factors to be weighed in considering whether to exclude evidence under section 352: the inflammatory nature of the evidence, the probability of confusion, remoteness, consumption of time, and the probative value of the evidence. At issue in Harris was whether a prior act of sexual violence should be admitted in a sexual assault case. (Id. at p. 730.) Harris held the trial court improperly admitted evidence of the prior offense pursuant to section 1108, a parallel statute to section 109. (Id. at p. 741.) The defendant, Harris, was a mental health nurse at a treatment center; he was accused of fondling, kissing and sexually preying on women who were vulnerable due to their mental health conditions. (Id. at pp. 730-733.) The prosecution sought to introduce evidence of a prior sex offense that was extremely violent; the evidence described a viciously beaten and bloody victim. (Id. at p. 738.)

The court ruled the prior act should be excluded because as presented in redacted form, it was extremely inflammatory in comparison to the charged case. (People v. Harris, supra, 60 Cal.App.4th at p. 741.) The jury also heard an incomplete and distorted version of the incident that suggested that it was also based on breach of trust and taking advantage of a physically and emotionally vulnerable victim. (Id. at p. 738.) The court also concluded that confusion was likely because the jury

6

was told that the defendant was convicted of burglary with great bodily harm, not rape. (<u>Ibid.</u>) This jury was left to speculate on the reason for the discrepancy, creating the possibility that the jurors would punish the defendant in this action for his prior crime. (<u>Ibid.</u>) Remoteness of the propensity evidence also favored exclusion; the prior act occurred 23 year before the charged offenses. Since then the defendant had led a relatively blameless life aside from a drunk driving arrest following his release from prison. (<u>Id.</u> at p. 739). Moreover, the propensity evidence was time-consuming, comprising 25 pages of transcript and requiring numerous additional jury instructions. (<u>Ibid.</u>) Finally, the court considered the probative value of the prior incident. Because it did little but show that defendant was a violent sex offender, and it did not bolster the victim's credibility, <u>Harris</u> reversed defendant's conviction. (<u>Id.</u> at pp. 739-741.)

This case is distinguishable from <u>People v. Harris</u>, <u>supra</u>, 60 Cal.App.4th 727 because the propensity evidence in this case was not unduly prejudicial. In <u>Harris</u>, the prior act was inflammatory, likely to confuse the jury, consumed a significant amount of time, remote, and irrelevant. Here, without minimizing the injuries suffered by K.C., the prior act was not unduly prejudicial as to evoke an emotional bias against the defendant. The testimony describing defendant's uncharged acts was no stronger or more inflammatory than the testimony concerning the charged offenses. The jury could not have been confused by only two separate incidents because the facts were straightforward. The evidence of the prior incident did not consume an undue amount of time. K.C. and the doctor's testimony about the prior incident were brief, occupying only five pages of transcript. The propensity evidence was not too remote since it occurred only two years earlier. In both instances defendant struck K.C. with sufficient force to break her ribs. The striking similarity of the current and prior offenses established the probative value of the prior act. It showed defendant responded to arguments with K.C. by striking her, illustrating his propensity to commit domestic violence. The evidence also showed probative value because the doctor's testimony bolstered K.C.'s credibility by corroborating her version of the facts. Moreover, contrary to defendant's contention, the trial court committed no error because the evidence was not cumulative since it involved a separate domestic violence event than the charged case.

The trial court properly recognized that nothing in section 1109 required that prior domestic violent acts be corroborated by documented evidence. This contention relates more to the weight of the evidence than to its admissibility. (<u>People v. Anderson</u> (2001) 25 Cal.4th 543, 587.) Nevertheless, there was credible evidence and corroboration of the prior incident. K.C.'s reluctance to provide details of the prior incident showed she had no motive to fabricate the cause of her previous rib injury. Moreover, x-rays of K.C.'s prior rib injury and the doctor's testimony interpreting the x-ray corroborates the prior incident. Because the trial court properly subjected evidence of the uncharged domestic violence misconduct to the weighing process of section 352, we conclude that the defendant's constitutional rights to due process and a fair trial were not violated.

Respondent's Lodged Document no. 3, pp. 5-9.

/////

A writ of habeas corpus is available under 28 U.S.C. § 2254(a) only on the basis of some transgression of federal law binding on the state courts. Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983). It is unavailable for alleged error in the interpretation or application of state law. Middleton v. Cupp, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986). Habeas corpus cannot be utilized to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377, 92 S. Ct. 2174, 2178 (1972).

The Supreme Court has reiterated the standards of review for a federal habeas court. Estelle v. McGuire, 502 U.S. 62, 112 S. Ct. 475 (1991). In Estelle v. McGuire, the Supreme Court reversed the decision of the Court of Appeals for the Ninth Circuit, which had granted federal habeas relief. The Court held that the Ninth Circuit erred in concluding that the evidence was incorrectly admitted under state law since, "it is not the province of a federal habeas court to reexamine state court determinations on state law questions." Id. at 67-68, 112 S. Ct. at 480. The Court re-emphasized that "federal habeas corpus relief does not lie for error in state law." Id. at 67, 112 S. Ct. at 480, citing Lewis v. Jeffers, 497 U.S. 764, 110 S. Ct. 3092, 3102 (1990), and Pulley v. Harris, 465 U.S. 37, 41, 104 S. Ct. 871, 874-75 (1984) (federal courts may not grant habeas relief where the sole ground presented involves a perceived error of state law, unless said error is so egregious as to amount to a violation of the Due Process or Equal Protection clauses of the Fourteenth Amendment).

The Supreme Court further noted that the standard of review for a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States (citations omitted)." Id. at 68, 112 S. Ct. at 480. The Court also stated that in order for error in the state trial proceedings to reach the level of a due process violation, the error had to be one involving "fundamental fairness," Id. at 73, 112 S. Ct. at 482, and that "we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'" Id. at 73, 112 S. Ct. at 482. Habeas review does not lie in a claim that the state court erroneously allowed

or excluded particular evidence according to state evidentiary rules. Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991).

To the extent that petitioner argues that the admission of propensity evidence[1] violates the Due Process Clause – the argument cannot be sustained in this AEDPA case. The United States Supreme Court has not found that admission of propensity evidence violates any Due Process right. Estelle v. McGuire, 502 U.S. 62, 765 n.5, 112 S.Ct. 475 (1991); Larson v. Palmeteer, 515 F.3d 1057, 1066 (9th Cir. 2008).

Assuming that due process could be violated on another basis, that the evidence was so unduly prejudicial in light of its probative propensity or other value, the criminal process lacked fundamental fairness (a difficult argument to make once propensity is removed from the equation), petitioner has not made out such a case. The reasons set forth by the California Court of Appeal demonstrate that any potential prejudice outweighed the probative value.

B. Ineffective Assistance of Counsel

*Legal Standard*

The test for demonstrating ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688, 104 S. Ct. at 2065. To this end, the petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. Id. at 690, 104 S. Ct. at 2066. The federal court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. Id., 104 S. Ct. at 2066. "We strongly presume that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d

---

[1] Propensity evidence means – a similar act as alleged in the present case occurred before involving the same actor, makes it more likely that the actor committed the act at issue,

9

695, 702 (9th Cir. 1990) (citing Strickland at 466 U.S. at 689, 104 S. Ct. at 2065).

Second, a petitioner must affirmatively prove prejudice. Strickland, 466 U.S. at 693, 104 S. Ct. at 2067. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id., 104 S. Ct. at 2068.

In extraordinary cases, ineffective assistance of counsel claims are evaluated based on a fundamental fairness standard. Williams v. Taylor, 529 U.S. 362, 391-93, 120 S. Ct. 1495, 1512-13 (2000), (citing Lockhart v. Fretwell, 113 S. Ct. 838, 506 U.S. 364 (1993)).

The Supreme Court has recently emphasized the importance of giving deference to trial counsel's decisions, especially in the AEDPA context:

> In Strickland we said that "[j]udicial scrutiny of a counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." 466 U.S., at 689, 104 S.Ct. 2052. Thus, even when a court is presented with an ineffective-assistance claim not subject to § 2254(d)(1) deference, a [petitioner] must overcome the "presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Ibid. (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).
>
> For [petitioner] to succeed, however, he must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. See Williams, supra, at 411, 65 S. Ct. 363.[2] Rather, he must show that the [ ]Court of Appeals applied Strickland to the facts of his case in an objectively unreasonable manner.

Bell v. Cone, 535 U.S. 685, 698-699, 122 S. Ct. 1843, 1852 (2002).

/////

---

[2] This internal citation should be corrected to Williams v. Kaiser, 323 U.S. 471, 477, 65 S. Ct. 363 (1945).

*Analysis*

Petitioner first argues that his counsel was ineffective for failing to object to admission of his prior act of domestic violence on grounds that at the preliminary hearing, K.C. testified that it was inadvertent, i.e. he did not intentionally hit her. At the preliminary hearing, K.C. testified as follows:

> Q: And how did you suffer injury to your left side ribs on that occasion?
>
> A: It was just–I don't really thin[k] he meant to do it that time. But he just kind of hit me with his hand on my right, like right here (indicating).
>
> Q: For the record, she's got her hand on her right rib area.
>
> A: And I couldn't move, or couldn't breath, or nothin.' But I didn't go to the doctor, I didn't call the police or nothin' like that.

CT at 54.

At the preliminary hearing, K.C. testified that she did not think that petitioner meant to "do it that time." However, she also testified that he hit her hard enough so that she could not breath or move, from which it was reasonable to infer that petitioner's conduct was intentional rather than inadvertent. K.C.'s attempt to minimize petitioner's conduct was contradicted by her description of her injuries. An objection by petitioner's counsel to admission of this propensity evidence on grounds that petitioner had only accidently hurt her would have been overruled. For this reason, the court finds that petitioner's counsel was not ineffective for failing to raise this objection.

No state court issued a reasoned decision addressing this claim. See Respondent's Lodged Documents nos. 5-7.[3] Accordingly, having conducted a de novo review of the record, the court finds that petitioner's counsel was not ineffective for failing to object on this ground.

/////

---

[3] The Superior Court found this claim procedurally barred. The California Court of Appeal and Supreme Court issued unreasoned opinions denying petitioner's habeas petitions raising this claim.

11

Citing the court transcript at page 37, petitioner contends that at the preliminary hearing, K.C. testified that petitioner hit her on her right side during the prior incident. Petitioner argues that at trial, the doctor who testified for the prosecution stated that the injury occurred on the left side. Petitioner argues that counsel should have objected to admission of the propensity evidence on grounds that it was not credible based on the conflicting testimony regarding where K.C.'s injuries occurred.

As indicated above, at the preliminary hearing K.C. testified that the injury occurred on her *left* side. CT at 37: 3. Accordingly, having conducted a de novo review of the record, the court finds that this claim is without merit because it is not supported by the record.

Petitioner next argues that counsel was ineffective for failing to investigate his claim that he and K.C. had never cohabitated. Petitioner contends that he had allowed K.C. to stay with him on a few occasions but she never "moved in." Petitioner claims that he told his lawyer that two of the three addresses K.C. claimed to have lived with him were state funded assisted living facilities for men only. Petitioner also claims that he gave his counsel the name of Robert Tyron, the person he shared a lease with at the third address K.C. claimed to have lived with him. Petitioner claims that Tyron could have testified that K.C. often spent the night but did not live there.

The jury was instructed that co-habiting meant "two unrelated adult persons living together for a substantial period of time, resulting in some permanency of relationship." CT at 151.

At the preliminary hearing, K.C. testified that during the past 3 years, she and petitioner had lived together for about 1 1/3 years. CT at 22. She testified that they lived on Landwood in Carmichael. CT at 34. She spent a few nights a week with petitioner at a house in Rancho Cordova and they lived together at Granny's house. CT at 34. Granny's house was on Rio Linda Boulevard. CT at 34.

\\\\\

At trial, K.C. testified that she had known petitioner for 2 ½ to 3 years. RT at 332. She testified that she and petitioner had lived together in a house in Carmichael off Landwood. RT at 333. She could not recall how long they had lived there together. RT at 333. At some point, she moved out of the Landwood house into Granny's house, where she lived for about one year. RT at 333-334. Petitioner lived with K.C. at Granny's house for some but not all of the time she lived there. RT at 334. Granny was an actual person. RT at 333. After that, she spent the night with petitioner at a house in Rancho Cordova where he was living. RT at 335. She spent 2-3 nights a week at the Rancho Cordova house. RT at 336.

At the time of the February 1, 2004, incident, K.C. testified that she and petitioner had not lived together for a few months. RT at 337-338. On February 1, 2004, K.C. lived at 7715 Renell Way. RT at 338.

At trial, petitioner testified that he and K.C. lived together in the month of August 2002, three weeks in January 2003 and April of 2003. RT at 512. After April 2003, he and K.C. did not live together. RT at 513. Petitioner testified that he lived at the Rancho Cordova house but not with K.C. RT at 511-512.

While K.C.'s memory of events was vague, she testified that she and petitioner lived together at two locations: Granny's house and the house on Lakewood. While petitioner claims that these locations were state run assisted living facilities for men only, he offers no evidence to support such a claim. Because this claim is unsupported by any evidence, this claim is without merit. See James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) (stating that unsupported, conclusory allegations do not warrant habeas relief).

The court presumes that Tyron would have testified that K.C. spent a few nights a week at the Rancho Cordova house but did not live there. Because K.C. testified to this circumstances as well, Tyron's testimony was not required. Counsel was not ineffective for failing to call Tyron as a witness.

\\\\\

        The Superior Court was the last state court to issue a reasoned decision addressing petitioner's claim that counsel was ineffective for failing to investigate petitioner's claims that he and K.C. did not live together.  See Respondent's Lodged Documents 5-7.  The denial of this claim by the Superior Court was not an unreasonable application of clearly established Supreme Court authority.

        Petitioner next argues that it was impossible for prosecution witness Manuel Lopez to have seen what he claims to have seen, i.e. petitioner attacking K.C., from where he was standing.  Petitioner's friend, Charlotte Frost, went to the scene and took several photographs which petitioner alleges demonstrate that Manual Lopez could not have seen what he testified to.  Petitioner claims that he gave these photographs to his trial counsel but she said she could not use them because they were not taken by an investigator from her office.

        At the preliminary hearing, Manual Lopez testified that he saw petitioner stomping on K.C. in the shrubbery adjacent to Hollywood Video Rental Store.  CT at 62.  At that time, Lopez was approximately 40 yards away.  CT at 63.  Lopez and his son approached petitioner and K.C. to see if they could help.  CT at 64.  He then sent his son to get a police officer and told petitioner that he had done that.  CT at 64.

        Regarding his exact location when he saw petitioner, at the preliminary hearing Lopez testified:

> Q: Would you describe when you first came upon these people?
>
> A: Uh-huh.
>
> Q: Were you walking through a parking lot, or on a sidewalk, or where were you walking, you and your son?
>
> A: We were on the sidewalk.
>
> Q: On the sidewalk?
>
> A: Yes.
>
> Q: So the sidewalk along the street?

| | |
|---|---|
| 1 | A: Uhm, it would go–going parallel with Mack Road. |
| 2 | Q: Sidewalk on Mack Road.  Is that right? |
| 3 | A: Not the sidewalk adjacent to Mack Road; but within the store complex, the sidewalk that, that runs along the row of stores. |
| 4 | |
| 5 | Q: So is there vegetation or bushes in between Mack Road and the sidewalk? |
| 6 | A: There's parking lot–there's parking islands or dividers with flowers and such; yeah, there's shrubs.  It's a normal parking lot–store complex parking lot. |
| 7 | Q: You were in the parking lot.  Is that correct? |
| 8 | A: We were, yeah, within the parking lot parameter area, yeah. |
| 9 | Q: And where was the car parked when you came up on them the first time? |
| 10 | A: It was along– |
| 11 | Q: Car referred to as the white car? |
| 12 | A: Yeah.  His car was parked along side Hollywood.  You can say it was behind the store. |
| 13 | |
| 14 | Q: Okay.  It wasn't on Mack Road? |
| 15 | A: No.  No.  Because Hollywood Video is within the store complex area where–or acreage, or– |
| 16 | Q: In the shopping center? |
| 17 | A: Within the shopping center, yeah. |
| 18 | Q: Was the car parked right up against Hollywood Video, like parallel to the Hollywood Video walkway; or was it a distance from it? |
| 19 | |
| 20 | A: It was close to the store. |
| 21 | Q: Okay.  So when you walked up and saw these two people, was the car in between you? |
| 22 | A: No.  It was off to my left. |
| 23 | Q: Okay.  The car was off to your left. |
| 24 | A: Uh-huh (positive). |
| 25 | ///// |
| 26 | ///// |

15

1     Q: And people were in clear sight?

2     A: Right.

3 CT at 75-76.

4     Attached as an exhibit to the petition is a letter from Charlotte Frost. In this letter, Ms. Frost states that she drove to the shopping center on the corner of Mack and Franklin Boulevard. She parked her car in the entrance to the mall near the northwest corner of the Hollywood Video Store. She then walked over to the Check Cashing Store which is at a 45 degree angle to the Hollywood Video Store and took photographs of her car. Ms. Frost writes that this is the location the witness testified that he was standing in when he saw petitioner. Frost writes that her view of her car was blocked by rows of parked cars.

    For the following reasons, the court finds that petitioner's counsel was not ineffective for failing to investigate Frost's claim that Lopez could not have seen petitioner. The record contains no evidence demonstrating that Frost had any expertise to support her opinion that Lopez could not have seen petitioner. In other words, Frost was not a trained investigator. In addition, it is not clear from Frost's letter that she actually stood where Lopez stood when he witnessed petitioner hurting K.C. That Frost's view was blocked by cars does not necessarily mean that Lopez's view was blocked. In addition, Lopez's testimony regarding what he witnessed was very clear and he had no motive to lie. Lopez's testimony was supported by that of his son, who also saw petitioner hurting K.C. RT at 386-388. For these reasons, the court does not find that counsel was ineffective for failing to pursue the information contained in Frost's letter and the photographs.

    The Superior Court was the last state court to issue a reasoned decision addressing petitioner's claim that counsel was ineffective for failing to investigate Frost's claims that Lopez could not have seen petitioner. <u>See</u> Respondent's Lodged Documents 5-7. The denial of this claim by the Superior Court was not an unreasonable application of clearly established Supreme Court authority.

1         Finally, petitioner argues that his counsel was ineffective for failing to offer
2  evidence that the victim had not suffered great bodily injury, which resulted in the enhancements.
3  Petitioner claims that the medical report from the hospital revealed that K.C. did not suffer great
4  bodily injury.

5         The jury was instructed that "great bodily injury" (Cal. Penal Code § 12022.7(e))
6  was defined as a "significant or substantial physical injury.  Minor, trivial or moderate injuries do
7  not constitute great bodily injury."  CT at 163.  The jury was also instructed that "serious bodily
8  injury" (Cal. Penal Code § 243(d)) was defined as "serious impairment of physical condition,
9  including, but not limited to, the following: loss of consciousness; concussion; bone fracture;
10 protracted loss or impairment of function of any bodily member or organ; a wound requiring
11 extensive suturing; and serious disfigurement."  CT at 164.

12        At trial, Dr. Battistella that he examined K.C. at the emergency room on February
13 1, 2004.  RT at 437.  He testified that she had right-sided chest wall tenderness consistent with
14 rib fractures.  RT at 441.  In addition, she had evidence of a concussion.  RT at 441.

15        Petitioner offers no evidence supporting his claim that evidence existed that K.C.
16 did not suffer serious bodily injury.  While petitioner suggests that an expert could have disputed
17 that K.C. suffered from rib fractures and a concussion, he offers no evidence to support this
18 claim.  Because this claim is unsupported by any evidence, this claim is without merit.  See
19 James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) (stating that unsupported, conclusory allegations
20 do not warrant habeas relief).

21        The Superior Court was the last state court to issue a reasoned decision addressing
22 petitioner's claim that counsel was ineffective for failing to offer evidence that K.C. did not
23 suffer serious bodily injury.  See Respondent's Lodged Documents 5-7.  The denial of this claim
24 by the Superior Court was not an unreasonable application of clearly established Supreme Court
25 authority.
26 /////

1  Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a
2  writ of habeas corpus be denied.
3  These findings and recommendations are submitted to the United States District
4  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty
5  days after being served with these findings and recommendations, any party may file written
6  objections with the court and serve a copy on all parties.  Such a document should be captioned
7  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
8  shall be served and filed within ten days after service of the objections.  The parties are advised
9  that failure to file objections within the specified time may waive the right to appeal the District
10 Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: 06/18/08

/s/ Gregory G. Hollows
_____
UNITED STATES MAGISTRATE JUDGE

logan.157